## Alois Schmidt, Appellee, v. Litchfield & Madison Railway Company, Appellant.

1. MASTER AND SERVANT—*negligent driving of motor.* Plaintiff, a railroad employe, was injured by being thrown from a gas motor car which had been derailed by a dog on a trestle, and he charged negligence on the part of defendant's train dispatcher who was driving. *Held*, that the manifest weight of the evidence was against the contention.

2. DAMAGES—*state of health previous to an accident.* The admissibility of evidence that a person injured had complained of

ill health and consulted physicians previously to the accident, is a matter which must necessarily be left largely to the discretion of the trial court.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 10, 1913.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

GEERS & GEERS, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, Alois Schmidt, claims to have been injured in his back while he was in the employ of appellant, by being thrown from a motorcar, driven by appellant's train dispatcher, C. E. Bickel, on his return from work. He brought suit, charging in his declaration negligence, carelessness and improper conduct on the part of Bickel in driving the car, so that it ran against a dog that was upon the track near a bridge or trestle on the railroad, whereby the motorcar was derailed and appellee thrown therefrom with great force. There was a plea of the general issue and on the trial, the jury gave a verdict and the court entered judgment in favor of appellee for $2,750.

Appellee offered no instruction and the court gave all those offered by appellant, but appellant assigns as reasons why the judgment should be reversed, that the verdict was against the manifest weight of the evidence and the court erred in its rulings in regard to certain testimony which appellant sought to elicit from some of the witnesses in regard to appellee's past condition of health.

As to the evidence in the case, it appeared that on May 23, 1910, appellant was operating a railroad running through Madison county, Illinois. At that time and for some time prior thereto, said Bickel, a train

dispatcher of appellant at Edwardsville, had operated over the tracks of the company, an uncovered gas motorcar, about 7 feet wide and 8 feet long, on which were two seats running crosswise of the car, each holding three persons. He used the car for one or more trips nearly every day, carrying officers or employes over the track. On said date George Bandy, bridge foreman, assisted by appellee, his brother William, and James Taylor, all of whom lived in Edwardsville, were engaged in repairing a bridge some miles south of there, near the village of Edwardsville. Bickel had taken them to the bridge in the motorcar in the morning and at 5:30 that evening returned for them to take them home. On the return trip Bickel was sitting on the right hand side in the front seat and with him at his left, was William Schmidt and on the back seat from right to left, were Taylor, Bandy and appellee. A few miles north of Madison, appellant's track crosses a trestle over a small stream. As the car approached the trestle a hound dog that had been with three persons, who had stopped near the trestle, ran upon the track in front of the car and started to go in the same direction, but was struck and killed by the car at about the ninth railroad tie out on the trestle. At the same time the car was thrown from the rails but it continued to run over the trestle some 72 ties further, when the front wheel broke or was torn off, the car turned across the track and its occupants thrown out. Appellee and his brother fell from the trestle upon which they had been thrown, to the water below, and in falling appellee claims he struck the end of one of the timbers of the bridge and received the injuries to his back of which he here complains. Bandy was rendered unconscious and so remained until the following day and at the trial could remember nothing whatever about the occurrence or seeing the dog. William Schmidt was out of the state at the time of the trial and the only witnesses present at the time of the occurrence, who testified concerning it, were appel-

lee, Bickel and Taylor who had been on the car, William and Bonnie Russell, who were fishing near the trestle and William Bowen and Edward Meyer, two of the persons who had been with the dog. Joseph Hennen an eyewitness was ill at the time of the trial, but an affidavit setting up what he would swear to if present and contained in a motion for a continuance, was read on behalf of appellant.

Appellee testified that when he first saw the dog, the motor car was 200 to 300 yards from it; that when the dog got into the center of the track, appellee was a few feet away from the bridge and Bickel said, "Watch me knock that dog;" that appellee told him to stop the car but that he did not do so but raised its speed and the car ran over the dog; that the dog was about 9 ties out on the bridge when the car struck it. Again he testified that the motorcar was about 100 feet from the dog when Mr. Bickel made the statement, "Watch me knock that dog." On cross-examination he said that when he first saw the dog it was next the track on the outside of the rail on the right hand side, some 8 or 9 feet from the trestle and that when he jumped into the center of the track, the car was 100 yards away from him; that when he first saw the dog, it was walking towards the bridge; that he could not swear how far the dog went before it got over into the track, but thought about 30 feet and it was then about 9 feet from the trestle; that he did not call Bickel's attention to the dog when he first saw it and did not know how far the car was from the dog when Bickel saw it; that he told Bickel to stop the car because they were in danger; that Bickel never said anything only, "watch me knock that dog" and reached back and put the car on as high speed as he could put her.

The claim of appellant was that the dog was not seen by Bickel until the car was right upon him when Bickel immediately applied the brake but was unable to stop the car in time to avoid striking the dog; that the occurrence was merely an unavoidable accident.

William Russell stated that he saw the dog with three persons coming along the track, about 75 yards from the trestle some four or five minutes before the car came, but did not see the dog again until after it was killed. Bonnie Russell swore that he saw Bowen come down the track with the dog; that the dog was about 30 feet from the trestle at the side of the track when he first saw him; that when he got to the trestle he stopped and then walked onward. Witness said he then turned to look at his fishing line and did not see the car strike the dog. Edward Meyer, a boy 16 years old, who was one of the parties with the dog, stated that just before the accident, Mr. Bowen was emptying strawberries out of his hat into a bucket and witness was standing at his side; that the dog was sitting by him; that he next saw the dog when it was struck on the trestle; that Mr. Bowen was emptying strawberries when the car passed; that he could not tell how long it was from the time he saw the dog lying at his side until he saw him running to the trestle; that he could not say whether it was four or five minutes or five seconds; that he could give no idea of the time. These are all the witnesses on behalf of appellee as to the occurrence.

On the other hand Bickel swore that when he first saw the dog, the car was five or six feet from it; that he applied the hand brake of the car which was all he had time to do and that the car struck the dog at the same time; that he could not see where the dog came from; that he did not make the remark to Schmidt, "Watch me knock that dog," or to any one else; that Schmidt did not tell him to watch out or slow up or that in substance; that he could not have stopped the car from the time he first saw the dog until he struck it. Taylor who was with him on the car, testified he first noticed the dog about six feet from the bridge and the car was then probably four or five feet from the dog; that the dog was then just outside of the track; that he never heard Bickel make the statement in ref-

erence to the dog testified to by Schmidt; that he was in position to have heard it and is positive he would have heard it had it been made; that there were no statements made there by either of them; that if Schmidt told Bickel to look out or slow up he did not hear him. Bowen the owner of the dog, testified that he was emptying strawberries into a bucket and the dog was along side of him a second or two before the car came along; that as the car went by he looked up and saw the dog on the trestle under the car; that the dog had been lying by him 10 or 15 minutes before the car came; that he saw the dog go from where he was to the trestle; that he was only a second or two emptying the strawberries into the bucket. The affidavit of Hennen read in evidence, stated that he was 14 years of age and was with Bowen and Meyer at the time of the accident; that he was watching Bowen and Meyers empty the strawberries; that the dog was lying on the ground where they were, until two or three seconds before it was struck by the car; that as the motorcar passed, he looked up and saw the dog was near the trestle; that he seemed to be running in a straight line from where witness and his companions were towards the trestle; that when the dog got to the trestle the car was only about ten feet away from it; that he seemed to start across the trestle and his front feet fell down between the ties.

In addition to the above testimony, Dr. Ferguson, a physician of Edwardsville, who examined appellee on the night he was injured, swore that appellee at that time, told him that as they approached the bridge, there were several men holding the dog to keep him from running out on the track, that the dog evidently got loose and jumped out ahead of the car and they ran over it and the car jumped the track; that he did not think anyone was to blame for the accident, that it was purely an accident. The making of this statement however, is denied by appellee.

We have gone somewhat at length into the facts shown by the record as the question whether those facts will sustain a recovery is the controlling one in the case. The burden of proof to sustain the charges made by him in his declaration and make out his case was upon appellee, but in doing this he has to depend almost wholly upon his own testimony. He was contradicated by a number of witnesses whose statements appear reasonable. When we consider this in connection with the testimony of the physician, as to the statement made to him by appellee, concerning the manner in which the injury occurred, we are led to the conclusion that plaintiff has not only failed to establish his right of action by a preponderance of the evidence, but that the manifest weight of the evidence was in favor of the appellant.

Appellee testified that before the accident he was in good health and worked every day. To meet this statement, appellant sought to show that appellee had complained of ill health and had consulted with physicians from time to time for a number of years past. The court permitted appellant to interrogate witnesses along these lines to a considerable extent, but it complains that objections were sustained to some of its interrogatories which sought to elicit information concerning appellee's complaints of ill health or ailments at remote periods. The admissibility of such evidence is a matter which must necessarily be largely left to the discretion of the trial court and while some of the questions, to which objections were sustained, might properly have been answered by the witnesses, yet upon the whole, the court below does not appear to us to have abused its discretion in this regard.

For the reason that the verdict of the jury was manifestly against the weight of the evidence, the judgment of the court below based on it will be reversed and the cause remanded.

*Reversed and remanded.*